**FILED**

JUN - 2 2004

LARRY W. PROPES, CLERK
U. S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | |
|---|---|
| James LaRue, ) | Case No.: 2 : 0 4-1 7 4 7-1 8 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **C O M P L A I N T** |
| ) | |
| DeWolff, Boberg & Associates, ) | |
| Inc., and The DeWolff, Boberg & ) | |
| Associates Employees' Savings ) | |
| Plan, ) | |
| ) | |
| Defendants. ) | |

Plaintiff, complaining of the Defendant herein, would respectfully show unto this

Honorable Court as follows:

I.

Plaintiff is a citizen and resident of the State of Texas.

II.

Defendant DeWolff, Boberg & Associates, Inc. (hereinafter "DeWolff") is a

corporate entity organized and existing pursuant to the laws of one of the states of the United

States and which does business and owns property in Charleston, South Carolina.

III.

Defendant The DeWolff, Boberg & Associates Employees' Savings Plan (hereinafter

"the plan") is organized as an E.R.I.S.A. governed retirement plan and is a legal entity

capable of being sued pursuant to E.R.I.S.A. 29 U.S.C.S. § 1132(d).

IV.

In this matter, the Plaintiff alleges a breach of fiduciary duty pursuant to E.R.I.S.A. 29 U.S.C.S. § 1001 *et. seq.* and this court has jurisdiction to hear this matter based upon the involvement of a federal question.

V.

Attached hereto as exhibit A is the plan document for the Defendant plan. The Defendant plan is a retirement plan which is governed by E.R.I.S.A. and in which certain eligible employees of DeWolff, Boberg & Associates are entitled to participate.

VI.

The Defendant DeWolff is the plan administrator of the plan.

VII.

Plaintiff is a participant in the plan and has continuously been since prior to calendar year 2001.

VIII.

According to the terms of the plan, participants such as the Plaintiff have a right to periodically direct the plan, by and through its' delegated administrators, as to how the participant wants his money invested.

IX.

In calendar year 2001 and 2002, the Plaintiff advised the Defendant, by and through its' delegated agents or administrators to invest his money a certain way. Despite the Plaintiff's instructions to the plan, by and through its' agents and administrators, the plan did not invest Plaintiff's money as he directed.

X.

Additionally, Plaintiff requested certain information from the Defendant plan which was not provided.

XI.

Plaintiff alleges a breach of fiduciary duty hereinbelow and under prevailing Fourth Circuit authority, Plaintiff is not required to exhaust administrative remedies pertaining to a breach of fiduciary duty claim under E.R.I.S.A. (See *Smith v. Sydnor*, 184 F.3d 356 (4th Cir. 1999).

**FOR A FIRST CAUSE OF ACTION**

**(Breach of Fiduciary Duty Pursuant to**
**E.R.I.S.A. 29 U.S.C.S. § 1104, § 1132(a)(3) and**
**Other Portions of E.R.I.S.A. 29 U.S.C.S. § 1001 *et. seq.*)**

XII.

Plaintiff incorporates all prior allegations herein, where not inconsistent, as if fully set forth herein.

XIII.

The Defendant DeWolff is the plan administrator of the subject plan and is responsible for the plan's workings and administrative details. DeWolff is responsible for seeing to it that the terms of the plan are adhered to by both participants and the entities hired by DeWolff to administer the plan. DeWolff is a fiduciary of the subject plan for the aforementioned purposes.

XIV.

On at least two occasions, the Plaintiff directed the plan, by and through its' appointed agents and administrators, to invest his money and contributions a certain way, but the plan and its' administrator, DeWolff, failed to invest Plaintiff's money as directed and as

a direct and proximate result, the Plaintiff's interest in the plan has been depleted approximately $150,000.00. Additionally, Plaintiff has requested certain information from DeWolff, which DeWolff is required to provide pursuant to E.R.I.S.A., but which DeWolff failed to provide within the time required by E.R.I.S.A..

XVIII.

DeWolff has breached its' fiduciary duties to the Plaintiff in the foregoing regards and Plaintiff respectfully requests that the court declare that DeWolff has breached its' fiduciary duties pursuant to E.R.I.S.A. 29 U.S.C.S. § 1104, § 1132(c), § 1022, and § 1024 and otherwise as the court may deem appropriate. Plaintiff respectfully requests that the court also award Plaintiff "make whole" or other equitable relief as allowed by E.R.I.S.A. 29 U.S.C.S. § 1132(a)(3) and that the court award the Plaintiff attorney's fees and costs pursuant to E.R.I.S.A. 29 U.S.C.S. § 1132(g).

**WHEREFORE,** having fully stated his claim against the Defendants, Plaintiff respectfully prays for (1) a declaration from the court that the Defendant has breached its' fiduciary duty pursuant to E.R.I.S.A. 29 U.S.C.S. § 1001 *et. seq.*, (2) for appropriate "make whole" or other equitable relief pursuant to E.R.I.S.A. 29 U.S.C.S. § 1132(a)(3), (3) for a statutory penalty for failure to provide information Plaintiff requested pursuant to E.R.I.S.A.. 29 U.S.C.S. § 1132(c), (4) for attorney's fees and costs pursuant to E.R.I.S.A. 29 U.S.C.S. § 1132(g), and (4) for such other and further relief as the court deems just and proper.

Robert E. Hoskins, Esq., #5144
**FOSTER LAW FIRM, L.L.P.**
PO Box 2123
Greenville, SC 29602

Page 4 of 5

(864) 242-6200
(864) 233-0290 (facsimile)


William C. Cleveland, III, Esq.
**BUIST·MOORE·SMYTHE·McGEE·P.A.**
PO Box 999
Charleston, SC 29402
(843) 722-3400
(843) 723-7398 (facsimile)

Attorneys for Plaintiff

Date: 6 - 1 - C4

**T**

# DEWOLFF, BOBERG & ASSOCIATES EMPLOYEES' SAVINGS PLAN

## SUMMARY PLAN DESCRIPTION

What happens to my non-vested account balance if I'm rehired?.................................................9

What happens to the non-vested portion of a terminated participant's account balance?..............10

## ARTICLE IV
## DISABILITY BENEFITS

Are disability benefits provided? ...................................................................................10

## ARTICLE V
## FORM OF BENEFIT PAYMENT

How will my benefits be paid? .....................................................................................10

May I delay the receipt of benefits?...............................................................................10

## ARTICLE VI
## DEATH BENEFITS

What happens if I die while working for the Employer?.......................................................11

Who is the beneficiary of my death benefit? ....................................................................11

How will the death benefit be paid to my beneficiary? ........................................................11

When must the last payment be made to my beneficiary?......................................................11

What happens if I'm a participant, terminate employment and die before receiving all my

benefits? ..............................................................................................................12

## ARTICLE VII
## IN-SERVICE DISTRIBUTIONS

Can I withdraw money from my account while working? ......................................................12

Can I withdraw money from my account in the event of financial hardship?...............................12

What constitutes a hardship? ......................................................................................12

Are there any conditions to receiving a hardship distribution? ..............................................13

## ARTICLE VIII
## TAX TREATMENT OF DISTRIBUTIONS

What are my tax consequences when I receive a distribution from the Plan?..............................13

Can I reduce or defer tax on my distribution? ..................................................................13

## ARTICLE IX
## HOURS OF SERVICE

What is an Hour of Service? .......................................................................................14

How are Hours of Service credited? ..............................................................................14

## ARTICLE X
## LOANS

May I borrow money from the Plan?...................................................................................15

What are the loan rules and requirements?...........................................................................15

## ARTICLE XI
## YOUR PLAN'S TOP HEAVY RULES

What is a top heavy plan?.....................................................................................................16

What happens if the Plan becomes top heavy?.....................................................................16

## ARTICLE XII
## PROTECTED BENEFITS

Is my benefit protected?.......................................................................................................17

Are there any exceptions to the general rule?......................................................................17

Can the Plan be amended?....................................................................................................17

What happens if the Plan is discontinued or terminated?....................................................17

What are my rights as a Plan participant?.............................................................................17

What duties are imposed on the people or entities who operate the Plan?...........................18

How do I submit a claim for Plan benefits?..........................................................................19

What if my benefits are denied?...........................................................................................19

What is the Claims Review Procedure?................................................................................19

What can I do if I have questions or my rights are violated?...............................................20

## ARTICLE XIII
## GENERAL INFORMATION ABOUT THE PLAN

General Plan Information.......................................................................................................21

Employer Information............................................................................................................21

Administrator Information......................................................................................................21

Trustee Information ...............................................................................................................22

Service of Legal Process.......................................................................................................22

# DEWOLFF, BOBERG & ASSOCIATES EMPLOYEES' SAVINGS PLAN

## SUMMARY PLAN DESCRIPTION

## INTRODUCTION TO YOUR PLAN

We have adopted DeWolff, Boberg & Associates Employees' Savings Plan ("Plan") to provide you with the opportunity to save for retirement on a tax-deferred basis. This Summary Plan Description ("SPD") contains valuable information regarding when you may become eligible to participate under the Plan, your Plan benefits, your distribution options, and many other features of the Plan. You should take the time to read this SPD to get a better understanding of your rights and obligations under the Plan.

This SPD is written in a non-technical manner using a question and answer format. We have attempted to answer most of the questions you may have regarding your benefits under the Plan. If this SPD does not answer all of your questions, please contact the Administrator. The name and address of the Administrator can be found in the Article of this SPD entitled "General Information About The Plan."

This SPD describes the Plan's benefits and obligations as contained in the legal Plan document, which governs the operation of the Plan. The Plan document is written in much more technical and precise language. If the non-technical language under this SPD and the technical, legal language of the Plan document conflict, the Plan document always governs. If you wish to receive a copy of the legal Plan document, please contact the Administrator.

This SPD describes the current provisions of the Plan, as designed to comply with applicable legal requirements. The Plan is subject to federal laws, such as ERISA (the Employee Retirement Income Security Act), the Internal Revenue Code and other federal and state laws which may affect your rights. The provisions of the Plan are subject to revision due to a change in laws or due to pronouncements by the Internal Revenue Service (IRS) or Department of Labor (DOL). We may also amend this Plan. If the provisions under this SPD change, we will notify you.

## ARTICLE I
## PARTICIPATION IN THE PLAN

**Am I eligible to participate in the Plan?**

Provided you are not an Excluded Employee, you are eligible to participate in the Plan once you satisfy the Plan's eligibility conditions described in the next question. The following employees are Excluded Employees and are not eligible to participate in the Plan:

- employees who are leased employees.

- employees whose employment is governed by a collective bargaining agreement under which retirement benefits were the subject of good faith bargaining, unless such agreement expressly provides for participation in this Plan.

- certain nonresident aliens who have no earned income from sources within the United States.

**When am I eligible to participate in the Plan?**

Provided you are not an Excluded Employee, you will be eligible to participate in the Plan once you satisfy the requirements below. However, you will actually enter the Plan once you reach the Entry Date as described in the next question.

You will be eligible to participate in the Plan if you have completed six (6) months of service.

You will have completed the required number of months if you are employed by us at any time after you have completed that number of months, measured from your initial employment commencement date.

If you are a veteran and are reemployed under the Uniformed Services Employment and Reemployment Rights Act of 1994, your qualified military service may be considered service with us. If you may be affected by this law, ask your Administrator for further details.

You should review the Article in this SPD entitled "HOURS OF SERVICE" for an explanation of an Hour of Service.

**When is my Entry Date?**

Provided you are not an Excluded Employee, you may begin participating under the Plan once you have satisfied the eligibility requirements and reached your "Entry Date." The Administrator may request that you complete certain paperwork related to your Plan participation. In addition, special rules may apply if you terminate employment and are then rehired. If you have questions about the timing of your Plan participation, please contact the Administrator.

Your Entry Date will be the first day of the Plan Year quarter coinciding with or next following the date you satisfy the eligibility requirements.

**What happens if I'm a participant, terminate employment and then I'm rehired?**

If you are no longer a participant because you terminated employment, and you are rehired, then you will continue to participate in the Plan in the same manner as if your termination had not occurred.

**ARTICLE II**
**CONTRIBUTIONS**

**What kind of Plan is this?**

This Plan is a type of qualified retirement plan commonly referred to as a 401(k) plan. As a participant under the Plan, you may elect to reduce your compensation by a specific percentage and have that amount contributed to the Plan on a pre-tax basis. You generally are not taxed on

your salary reductions until you withdraw those amounts from the Plan. In addition, we may make additional contributions to the Plan on your behalf. This Article describes the types of contributions that may be made to the Plan and how these monies will be allocated to your account to provide for your retirement benefit.

**Do I have to contribute money to the Plan in order to participate?**

No, you are not required to contribute any money in order to participate in our Plan.

**How much may I contribute to the Plan?**

As a participant, you may elect to defer a percentage of your compensation each year instead of receiving that amount in cash. The Administrator will notify you of the maximum percentage you may defer. In addition, you may separately elect to defer up to 100% of any bonus paid to you during the year. However, your total deferrals in any taxable year may not exceed a certain dollar limit which is set by law. The limit is determined under the following schedule:

|  Schedule | |
| --- | --- |
| Taxable Year | Limit |
| 2001 | $10,500 |
| 2002 | $11,000 |
| 2003 | $12,000 |
| 2004 | $13,000 |
| 2005 | $14,000 |
| 2006 | $15,000 |

Effective as of January 1, 2002, if you are age 50 or older, then you may elect to defer additional amounts (called "catch-up contributions") to the Plan. The additional amounts may be deferred regardless of any other limitations on the amount that you may defer to the Plan. The maximum "catch-up contribution" that you can make in 2002 is $1,000. This amount is increased by $1,000 in each year after 2002 up to 2006, when the maximum is $5,000. After 2006, the maximum may increase for cost-of-living adjustments.

The amount you elect to defer, and any earnings on that amount, will not be subject to income tax until it is actually distributed to you. However, the amount you defer is counted as compensation for Social Security taxes.

You should also be aware that the annual dollar limit is an aggregate limit that applies to all deferrals you may make under this Plan or other cash or deferred arrangements (including tax-sheltered 403(b) annuity contracts, simplified employee pensions or other 401(k) plans in which you may be participating). Generally, if your total deferrals under all cash or deferred arrangements for a calendar year exceed the annual dollar limit, the excess must be included in your income for the year. For this reason, it is desirable to request in writing that these excess deferrals be returned to you. If you fail to request such a return, you may be taxed a second time when the excess deferral is ultimately distributed from the Plan.

You must decide which plan or arrangement you would like to have return the excess. If you decide that the excess should be distributed from this Plan, you must communicate this in

writing to the Administrator no later than the March 1st following the close of the calendar year in which such excess deferrals were made. However, the entire dollar limit is exceeded in this Plan or any other plan maintained by us, you will be deemed to have notified the Administrator of the excess. The Administrator will then return the excess deferral and any earnings to you by April 15th.

You will always be 100% vested (your ownership rights) in the amount you deferred. This means that you will always be entitled to all amounts that you defer. This money will, however, be affected by any investment gains or losses. If there is an investment gain, then the balance in your account will increase. If there is an investment loss, then the balance in your account will decrease.

Distributions from amounts attributable to your salary deferrals (including any offset of loans) are not permitted before age 59 1/2 EXCEPT in the event of:

(a)    death;

(b)    separation from service; or

(c)    reasons of proven financial hardship. (See the question "Can I withdraw money from my account in the event of financial hardship?" found in the Article of this SPD entitled "In-Service Distributions" for an explanation of financial hardship.)

In the event you receive a hardship distribution from your deferrals to this Plan pursuant to your certification and agreement that certain conditions are satisfied, or any other plan maintained by us, you will not be allowed to make additional salary deferrals for a period of twelve (12) months after you receive the distribution. Furthermore, the dollar limitation set by law with respect to your taxable year following the year in which you received the distribution, will be reduced by your salary deferrals, if any, for the taxable year of the distribution.

In addition, if you are a highly compensated employee (generally owners, officers or individuals receiving wages in excess of certain amounts established by law), a distribution from amounts attributable to your salary deferrals of certain excess contributions may be required to comply with the law. The Administrator will notify you when a distribution is required.

**How often can I modify the amount I contribute?**

The amount you elect to defer will be deducted from your pay in accordance with a procedure established by the Administrator. The procedure will require that you enter into a written salary reduction agreement after you satisfy the Plan's eligibility requirements. You will be permitted to modify your election during the Plan Year. However, changes to a salary reduction election are only permitted four times each year, prior to the first day of each Plan Year quarter. You are also permitted to revoke your election any time during the Plan Year.

**Will the Employer contribute to the Plan?**

Each year, we will contribute to the Plan the following amounts:

(a)     The total amount of the salary reduction you elected to defer. (See the question in this Article entitled "How much may I contribute to the Plan?")

(b)     On behalf of each participant, we will make a qualified non-elective contribution equal to a uniform percentage of your compensation, which percentage will be determined each year by the Employer.

You will share in this qualified non-elective contribution if you are actively employed during the Plan Year.

(c)     A discretionary profit sharing contribution.

You must complete a Year of Service during the Plan Year and be actively employed on the last day of the Plan Year to share in this discretionary profit sharing contribution.

You will have completed a Year of Service for purposes of sharing in our contributions if you are credited with at least 1000 Hours of Service during a Plan Year.

**Will I share in Employer contributions during the year of my Retirement (Normal or Late) or death?**

In determining your eligibility to share in contributions for the year, there are special rules which apply if your employment terminates due to your Retirement (Normal or Late) or death.

In such cases, you will be eligible to share in the contributions in accordance with the following:

If the reason your employment terminated is due to your Retirement (Normal or Late) or death, then you will be eligible to share in the contribution for the year without regard to whether you satisfied the requirements explained above.

**How will the Employer contributions be allocated to my account?**

We will allocate the amount you elect to defer to an account maintained by the Trustee on your behalf. You will always be 100% vested (your ownership rights) in these contributions.

If you are eligible, we will also allocate the qualified non-elective contribution made to the Plan on your behalf. (See the question in this Article "Will the Employer contribute to the Plan?" to determine if you are eligible.) You will always be 100% vested (your ownership rights) in these contributions.

Our discretionary profit sharing contribution will be "allocated" or divided among participants eligible to share in the contribution for the Plan Year. (See the question in this Article "Will the Employer contribute to the Plan?" to determine if you are eligible.) Your share of the contribution will depend upon how much compensation you received during the year and the compensation received by other eligible participants.

Your share of our discretionary profit sharing contribution is determined by the following fraction:

$$\text{Employer's Discretionary Contribution} \quad X \quad \frac{\text{Your Compensation}}{\begin{array}{c}\text{Total Compensation of All}\\\text{Participants Eligible to}\\\text{Share}\end{array}}$$

For example: Suppose our discretionary profit sharing contribution for the Plan Year is $20,000. Employee A's compensation for the Plan Year is $25,000. The total compensation of all participants eligible to share, including Employee A, is $250,000. Employee A's share will be:

$$\$20,000 \quad X \quad \frac{\$25,000}{\$250,000} \quad \text{or} \quad \$2,000$$

These contributions will vest (your ownership rights) in accordance with the vesting schedule. (See the question "What is my vested interest in my account?" found in the Article of this SPD entitled "Retirement Benefits" for an explanation of your ownership rights.)

In addition to our contributions made to your account, your account will be credited annually with a share of the investment earnings or losses of the trust fund.

**What compensation is used to determine my Plan benefits?**

For the purposes of the Plan, compensation has a special meaning. Compensation is defined as your total compensation that is subject to income tax, that is, all of your compensation paid to you by us during a Plan Year, but

- including your salary reduction contributions to any plan or arrangement maintained by your Employer.

Your compensation will be recognized for benefit purposes from your date of entry into the Plan.

**Is there a limit on the amount of compensation which can be considered?**

The Plan, by law, cannot recognize compensation in excess of $200,000 ($170,000 for years beginning prior to 2002). This amount will be adjusted in future years for cost of living increases.

**Are there limits on how much can be contributed to my account each year?**

Generally, the law imposes a maximum limit on the amount of contributions you may receive under the Plan. This limit applies to all contributions we make on your behalf, all contributions you make to the Plan and any other amounts allocated to any of your accounts during the Plan Year, excluding earnings and any transfers/rollovers. This total cannot exceed the lesser of $40,000 ($35,000 for the year beginning in 2001) or 100% (25% for years beginning

prior to 2002) of your annual compensation (for this purpose, compensation includes your salary deferrals).

## May I "rollover" payments from other retirement plans or IRAs?

At the discretion of the Administrator, if you are a participant, you may be permitted to deposit into the Plan distributions you have received from other plans and IRAs. Such a deposit is called a "rollover" and may result in tax savings to you. You may ask your prior plan administrator or trustee to directly transfer (a "direct rollover") to this Plan all or a portion of any amount which you are entitled to receive as a distribution from a prior plan. Alternatively, if you received a distribution from a prior plan, you may elect to deposit any amount eligible for rollover within 60 days of your receipt of the distribution. You should consult qualified counsel to determine if a rollover is permitted and in your best interest.

Your rollover will be placed in a separate account called a "participant's transfer/rollover account." You will always be 100% vested (your ownership rights) in "rollovers" and "direct rollovers." This means that you will always be entitled to all of your rollover contributions. Rollover contributions will be affected by any investment gains or losses.

You may withdraw the amounts in your "participant's transfer/rollover account" at any time.

## How is the money in the Plan invested?

You will be able to direct the investment of your entire interest in the Plan. The Administrator will provide you with information on the investment choices available to you, the frequency with which you can change your investment choices and other information. Periodically, you will receive a benefit statement that provides information on your account balance and your investment returns. If you have any questions about the investment of your Plan accounts, please contact the Administrator (or other Plan representative). To the extent you do not direct the investment of your Plan benefits, the Trustee or another designated person will be responsible for the investment of all assets held by the Plan. The Trustee or another designated person will make investment decisions that are made in the best interests of you and other Plan participants.

## ARTICLE III
## RETIREMENT BENEFITS

### What benefits will I receive at normal retirement?

You will be entitled to all your accounts under the Plan when you reach your Normal Retirement Age. However, actual payment of your benefits will, at your election, occur as soon as administratively feasible following your Normal Retirement Date.

Your Normal Retirement Date is the first day of the month coinciding with or next following your Normal Retirement Age.

You will attain your Normal Retirement Age when you reach your 65 birthday.

**What is my Late Retirement Date?**

You may remain employed past the Plan's Normal Retirement Date and retire instead on your Late Retirement Date. Your Late Retirement Date is the first day of the month coinciding with or next following the date you choose to retire after first having reached your Normal Retirement Date. On your Late Retirement Date, you will be entitled to all your accounts under the Plan. However, actual payment of your benefits will, at your election, occur as soon as administratively feasible following your Late Retirement Date.

**What happens if I leave the Employer's workforce before I retire?**

The Plan is designed to encourage you to stay with us until retirement. Payment of your account balance under the Plan is available upon your death or retirement.

If your employment terminates for reasons other than those listed above, you will be entitled to receive only your vested percentage (your ownership rights) of your account balance.

You may elect to have your vested benefit distributed to you as soon as administratively feasible following your termination of employment. However, if the value of your vested benefit is less than a certain dollar threshold, a distribution will be made to you within a reasonable time after you terminate employment. (See the question "How will my benefits be paid?" found in the Article of this SPD entitled "FORM OF BENEFIT PAYMENT" for an explanation of the dollar threshold.)

**What is my vested interest in my account?**

Your vested percentage in your account is determined under the following schedule and is based on vesting Years of Service. You will always, however, be 100% vested upon your Normal Retirement Age.

|                | Vesting Schedule |
| -------------- | ---------------- |
| Years of Service | Percentage |
| Less than 2    | 0 %   |
| 2              | 20 %  |
| 3              | 40 %  |
| 4              | 60 %  |
| 5              | 80 %  |
| 6              | 100 % |

Regardless of the vesting schedule above, you are always 100% vested in your salary reduction amounts and our qualified non-elective contributions contributed to the Plan.

Your vested percentage will not be less than your vested percentage under the Plan before this amendment and restatement.

Your vested benefit will normally be distributed to you or your beneficiary upon your death or retirement.

**How do I determine my Years of Service for vesting purposes?**

To earn a Year of Service, you must be credited with at least 1000 Hours of Service during any Plan Year. (See the Article in this SPD entitled "HOURS OF SERVICE" for an explanation of Hour of Service). The Plan contains specific rules for crediting Hours of Service for vesting purposes. The Administrator will track your service and will credit you with a Year of Service for each Plan Year in which you are credited with the required Hours of Service, in accordance with the terms of the Plan. If you have any questions regarding your vesting service, you should contact the Administrator.

**Does all my service count for vesting purposes?**

In calculating your vested percentage, all service you perform for us will generally be counted. However, there are some exceptions to this general rule.

Break in Service rules. If you terminate employment and are rehired, you may "lose" credit for prior service under the Plan's Break in Service rules.

For vesting purposes, you will have a Break in Service if you complete less than 501 Hours of Service during the computation period used to determine whether you have a Year of Service. However, if you are absent from work for certain leaves of absence such as maternity or paternity leave, you may be credited with 501 Hours of Service to prevent a Break in Service.

Five-year Break in Service rule. The five-year Break in Service rule applies only to totally nonvested (0% vested) participant's. If you are totally nonvested in your benefits resulting from our contributions and you have five consecutive Breaks in Service (as defined above), all the service you earned before the 5-year period no longer counts for vesting purposes. Thus, if you return to employment after incurring five consecutive Breaks in Service, you will be treated as a new employee (with no prior service) for purposes of determining your vested percentage under the Plan. However, if you have benefits under the Plan resulting from our contributions which are vested, you do not lose any rights to those benefits under these rules.

**As a veteran, will my military service count as service with the Employer?**

If you are a veteran and are reemployed under the Uniformed Services Employment and Reemployment Rights Act of 1994, your qualified military service may be considered service with us. If you may be affected by this law, ask your Administrator for further details.

**What happens to my non-vested account balance if I'm rehired?**

If you had no vested percentage in your account balance when you left, your account balance was forfeited. However, if you return to service with us before incurring 5 consecutive 1-Year Breaks in Service, your account balance as of your termination date will be restored unadjusted for any gains or losses.

If you were partially vested in your account balance when you left, the non-vested portion of your account balance will be forfeited on the earlier of the date:

(a)     of the distribution of your entire vested account balance, or

(b)    when you incur 5 consecutive 1-Year Breaks in Service.

If you previously received a distribution of your entire vested account balance, and are reemployed prior to incurring 5 consecutive 1-Year Breaks in Service, you may repay this distribution. If you repay the entire amount of the distribution, we will restore your account balance with your forfeited amount. You must repay this distribution within five years from your date of reemployment, or, if earlier, before you incur 5 consecutive 1-Year Breaks in Service. If you were fully vested when you left, you do not have the opportunity to repay your distribution.

**What happens to the non-vested portion of a terminated participant's account balance?**

The non-vested portion of a terminated participant's account balance remains in the Plan and is called a forfeiture. Forfeitures may be used by the Plan for several purposes such as the payment of Plan expenses. Any forfeitures not used by the Plan will be added to our discretionary profit sharing contribution and allocated to participants eligible to share in such contribution in the same manner as any such discretionary profit sharing contribution is allocated.

## ARTICLE IV
## DISABILITY BENEFITS

**Are disability benefits provided?**

No disability benefits are provided in the Plan. You will receive your normal benefits on termination of employment.

## ARTICLE V
## FORM OF BENEFIT PAYMENT

**How will my benefits be paid?**

All distributions from the Plan will be made in one lump-sum payment in cash. If your vested benefit under the Plan exceeds $5,000, then you must consent to the distribution before it may be made. If your vested benefit under the Plan does not exceed $5,000, then your benefit must be distributed to you as soon as possible following the event that entitles you to a distribution.

With respect to distributions made on and after January 1, 2002 with respect to participants who separate from service on or after, when determining your vested benefit under the Plan, "rollovers" (and any earnings allocable to "rollover" contributions) will not be taken into account. (See the question "May I "rollover" payments from other retirement plans or IRAs?" found in the Article in this SPD entitled "CONTRIBUTIONS" for an explanation of a "rollover.")

**May I delay the receipt of benefits?**

Yes, you may delay the receipt of benefits unless a distribution is required to be made, as explained earlier, because your vested benefit under the Plan does not exceed $5,000. However,

in addition to the benefit payment mentioned above, there are rules which require that certain minimum distributions be made from the Plan. Generally, these minimum distributions must begin not later than the April 1st following the year in which you reach age 70 1/2. However, if you are not a 5% owner and reach the age of 70 1/2 after the later of 1998 or the date your Employer adopts an amendment to the Plan to eliminate the age 70 1/2 required distribution, these required distributions must begin not later than the later of the April 1st following the end of the year in which you reach age 70 1/2 or retire. You should see the Administrator if you feel you may be affected by these rules.

## ARTICLE VI
## DEATH BENEFITS

### What happens if I die while working for the Employer?

If you die while working for us, your entire account balance will be used to provide your beneficiary with a death benefit.

### Who is the beneficiary of my death benefit?

If you are married at the time of your death, your spouse will be the beneficiary of the death benefit, unless an election is made to change the beneficiary. IF YOU WISH TO DESIGNATE A BENEFICIARY OTHER THAN YOUR SPOUSE, HOWEVER, YOUR SPOUSE MUST IRREVOCABLY CONSENT TO WAIVE ANY RIGHT TO THE DEATH BENEFIT. YOUR SPOUSE'S CONSENT MUST BE IN WRITING, BE WITNESSED BY A NOTARY OR A PLAN REPRESENTATIVE AND ACKNOWLEDGE THE SPECIFIC NONSPOUSE BENEFICIARY.

If you are married and you change your designation, your spouse must again consent to the change. In addition, you may elect a beneficiary other than your spouse without your spouse's consent if your spouse cannot be located.

If you are not married at the time of your death, you may designate the beneficiary on a form to be supplied to you by the Administrator.

In the event no valid designation of beneficiary exists, or if the beneficiary is not alive at the time of your death, the death benefit will be paid to your estate.

### How will the death benefit be paid to my beneficiary?

The death benefit will be paid to your beneficiary in a single lump-sum payment in cash.

### When must the last payment be made to my beneficiary?

If your designated beneficiary is a person (rather than your estate or most trusts) then minimum distributions of your death benefit must generally begin within one year of your death and must be paid over a period not extending beyond your beneficiary's life expectancy. If your spouse is the beneficiary, the start of payments may be delayed until the year in which you would have attained age 70 1/2. Generally, if your beneficiary is not a person, then your entire death benefit must be paid within five years after your death.

Since your spouse has certain rights to the death benefit, you should immediately report any change in your marital status to the Administrator.

**What happens if I'm a participant, terminate employment and die before receiving all my benefits?**

If you terminate employment with us and subsequently die, your beneficiary will be entitled to the vested percentage of your remaining account balance at the time of your death.

## ARTICLE VII
## IN-SERVICE DISTRIBUTIONS

**Can I withdraw money from my account while working?**

Generally, you may receive a distribution from the Plan prior to your termination of employment if you satisfy certain conditions.

**Can I withdraw money from my account in the event of financial hardship?**

Yes, if you satisfy certain conditions, the Administrator may direct the Trustee to distribute up to 100% of your account balance attributable to your salary reduction election in the event of hardship. This hardship distribution is not in addition to your other benefits and will therefore reduce the value of the benefits you will receive at normal retirement.

**What constitutes a hardship?**

A hardship is allowed only on account of an immediate and heavy financial need, which is payment in the event of one of the following:

(a)     The payment of expenses for medical care (described in Section 213(d) of the Internal Revenue Code) previously incurred by you or your dependent or necessary for you or your dependent to obtain medical care;

(b)     The costs directly related to the purchase of your principal residence (excluding mortgage payments);

(c)     The payment of tuition, related educational fees, and room and board expenses for the next twelve (12) months of post-secondary education for yourself, your spouse or dependent; or

(d)     The payment necessary to prevent your eviction from your principal residence or foreclosure on the mortgage of your principal residence.

**Are there any conditions to receiving a hardship distribution?**

A distribution will be made from your account, but only if you certify and agree that all of the following conditions are satisfied:

(a)     The distribution is not in excess of the amount of your immediate and heavy financial need. The amount of your immediate and heavy financial need may include any amounts necessary to pay any federal, state, or local income taxes or penalties reasonably anticipated to result from the distribution;

(b)     You have obtained all distributions, other than hardship distributions, and all nontaxable (at the time of the loan) loans currently available under all plans maintained by us;

(c)     That your elective contributions and employee contributions, with respect to a hardship distribution after December 31, 2001, will be suspended for at least six (6) months after your receipt of the hardship distribution. If you receive a hardship distribution during 2001, you are prohibited from making elective contributions and employee contributions for at least twelve (12) months after your receipt of the hardship distribution; and

(d)     That you will not make elective contributions for your taxable year immediately following the taxable year of the hardship distribution, except to the extent permitted by the Plan.

In addition to these rules, there are restrictions placed on hardship distributions which are made from certain accounts. These accounts are generally the accounts which receive your salary reduction contributions and other Employer contributions which are used to satisfy special rules that apply to 401(k) plans. Any hardship distribution from these accounts will be limited, as of the date of distribution, to your total salary reduction contributions, reduced by the amount of any previous distributions made to you from these accounts. Ask your Administrator if you need further details.

## ARTICLE VIII
## TAX TREATMENT OF DISTRIBUTIONS

**What are my tax consequences when I receive a distribution from the Plan?**

Generally, you must include any Plan distribution in your taxable income in the year in which you receive the distribution. The tax treatment may also depend on your age when you receive the distribution.

**Can I reduce or defer tax on my distribution?**

You may reduce, or defer entirely, the tax due on your distribution through use of one of the following methods:

(a)     The rollover of all or a portion of the distribution to a traditional Individual Retirement Account (IRA) or another qualified employer plan. This will result in no tax

being due until you begin withdrawing funds from the traditional IRA or other qualified employer plan. The rollover of the distribution, however, MUST be made within strict time frames (normally, within 60 days after you receive your distribution). Under certain circumstances all or a portion of a distribution (such as a hardship distribution from your salary reduction contributions and, after 2001, any hardship distribution) may not qualify for this rollover treatment. In addition, most distributions will be subject to mandatory federal income tax withholding at a rate of 20%. This will reduce the amount you actually receive. For this reason, if you wish to rollover all or a portion of your distribution amount, the direct transfer option described in paragraph (b) below would be the better choice.

(b)     For most distributions, you may request that a direct transfer of all or a portion of a distribution be made to either a traditional Individual Retirement Account (IRA) or another qualified employer plan willing to accept the transfer. A direct transfer will result in no tax being due until you withdraw funds from the traditional IRA or other qualified employer plan. Like the rollover, under certain circumstances all or a portion of the amount to be distributed may not qualify for this direct transfer, e.g., a distribution of less than $200 will not be eligible for a direct transfer. If you elect to actually receive the distribution rather than request a direct transfer, then in most cases 20% of the distribution amount will be withheld for federal income tax purposes.

WHENEVER YOU RECEIVE A DISTRIBUTION, THE ADMINISTRATOR WILL DELIVER TO YOU A MORE DETAILED EXPLANATION OF THESE OPTIONS. HOWEVER, THE RULES WHICH DETERMINE WHETHER YOU QUALIFY FOR FAVORABLE TAX TREATMENT ARE VERY COMPLEX. YOU SHOULD CONSULT WITH QUALIFIED TAX COUNSEL BEFORE MAKING A CHOICE.

## ARTICLE IX
## HOURS OF SERVICE

**What is an Hour of Service?**

You will be credited with an Hour of Service for:

(a)     each hour for which you are directly or indirectly compensated by us for the performance of duties during the Plan Year;

(b)     each hour for which you are directly or indirectly compensated by us for reasons other than performance of duties (such as vacation, holidays, sickness, disability, lay-off, military duty, jury duty or leave of absence during the Plan Year); and

(c)     each hour for back pay awarded or agreed to by us.

You will not be credited for the same Hours of Service both under (a) or (b), as the case may be, and under (c).

**How are Hours of Service credited?**

You will be credited with your actual Hours of Service.

## ARTICLE X
## LOANS

**May I borrow money from the Plan?**

Yes. You may request a participant loan using an application form provided by the Administrator. Your ability to obtain a participant loan depends on several factors. The Administrator will determine whether you satisfy these factors.

**What are the loan rules and requirements?**

There are various rules and requirements that apply for any loan which are outlined in this question. In addition, we have established a written loan program which explains these requirements in more detail. You can request a copy of the loan program from the Administrator. Generally, the rules for loans include the following:

- Loans are available to participants on a reasonably equivalent basis. Loans will be made to participants who are creditworthy. The Administrator may request that you provide additional information, such as financial statements, tax returns and credit reports to make this determination.

- All loans must be adequately secured. You must sign a promissory note along with a loan pledge. Generally, you must use your vested account balance as security for the loan, provided the outstanding balance of all your loans does not exceed 50% of your vested account balance. In certain cases, the Administrator may require you to provide additional collateral to receive a loan.

- You will be charged a reasonable rate of interest for any loan received from the Plan. The Administrator will determine a reasonable interest rate by reviewing the interest rates charged for similar types of loans by other lenders.

- If approved, your loan will provide for level amortization with payments to be made not less frequently than quarterly. Generally, the term of the loan may not exceed five (5) years. However, if the loan is for the purchase of your principal residence, the Administrator may permit a longer repayment period. Unless approved by the Administrator, you must repay your loan through payroll deduction. If you have an unpaid leave of absence or go on military leave while you have an outstanding loan, please contact the Administrator to find out your repayment options.

- All loans will be considered a directed investment from your account under the Plan. All payments of principal and interest by you on a loan will be credited to your account.

- The amount the Plan may loan to you is limited by rules under the Internal Revenue Code. All loans, when added to the outstanding balance of all other loans from the Plan, will be limited to the lesser of:

(a)    $50,000 reduced by the excess, if any, of your highest outstanding balance of loans from the Plan during the one-year period prior to the date of the loan over your current outstanding balance of loans; or

(b)    1/2 of your vested account balance.

Also, no loan in an amount less than $1,000 will be made nor will a loan be made if a prior loan is currently outstanding.

• If you fail to make payments when they are due under the terms of the loan, you will be considered to be "in default." The Trustee will consider your loan to be in default if any scheduled loan repayment is not made by the end of the calendar quarter following the calendar quarter in which the missed payment was due. The Plan would then have authority to take all reasonable actions to collect the balance owing on the loan. This could include filing a lawsuit or foreclosing on the security for the loan. Under certain circumstances, a loan that is in default may be considered a distribution from the Plan, and could result in taxable income to you. In any event, your failure to repay a loan will reduce the benefit you would otherwise be entitled to from the Plan.

## ARTICLE XI
## YOUR PLAN'S TOP HEAVY RULES

### What is a top heavy plan?

A retirement plan that primarily benefits "key employees" is called a "top heavy plan." Key employees are certain owners or officers of the Employer. A plan is generally a "top heavy plan" when more than 60% of the Plan assets are attributable to key employees.

Each year, the Administrator is responsible for determining whether the Plan is a "top heavy plan."

### What happens if the Plan becomes top heavy?

If the Plan becomes top heavy in any Plan Year, then non-key and key employees will be entitled to certain "top heavy minimum benefits," and other special rules will apply. Among these top heavy rules are the following:

• We may be required to make a contribution to your account in order to provide you with at least "top heavy minimum benefits."

If you are a participant in more than one Plan, you may not be entitled to "top heavy minimum benefits" under both Plans.

## ARTICLE XII
## PROTECTED BENEFITS

**Is my benefit protected?**

As a general rule, your interest in your account, including your vested interest, may not be alienated. This means that your interest may not be sold, used as collateral for a loan (other than a Plan loan), given away or otherwise transferred. In addition, your creditors may not attach, garnish or otherwise interfere with your account.

**Are there any exceptions to the general rule?**

There are two exceptions to this general rule. The Administrator must honor a "qualified domestic relations order." A "qualified domestic relations order" is defined as a decree or order issued by a court that obligates you to pay child support or alimony, or otherwise allocates a portion of your assets in the Plan to your spouse, former spouse, child or other dependent. If a qualified domestic relations order is received by the Administrator, all or a portion of your benefits may be used to satisfy the obligation. The Administrator will determine the validity of any domestic relations order received. You and your beneficiaries can obtain, without charge, a copy of the QUALIFIED DOMESTIC RELATIONS ORDER PROCEDURE from the Administrator.

The second exception applies if you are involved with the Plan's administration. If you are found liable for any action that adversely affects the Plan, the Administrator can offset your benefits by the amount you are ordered or required by a court to pay the Plan. All or a portion of your benefits may be used to satisfy any such obligation to the Plan.

**Can the Plan be amended?**

Yes. We have the right to amend the Plan at any time. In no event, however, will any amendment authorize or permit any part of the Plan assets to be used for purposes other than the exclusive benefit of participants or their beneficiaries. Additionally, no amendment will cause any reduction in the amount credited to your account.

**What happens if the Plan is discontinued or terminated?**

Although we intend to maintain the Plan indefinitely, we reserve the right to terminate the Plan at any time. Upon termination, no further contributions will be made to the Plan and all amounts credited to your accounts will become 100% vested. We will direct the distribution of your accounts in a manner permitted by the Plan as soon as practicable. (See the question "How will my benefits be paid?" found in the Article of this SPD entitled "FORM OF BENEFIT PAYMENT.") You will be notified of any modification or termination of the Plan.

**What are my rights as a Plan participant?**

As a participant in the Plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA provides that all Plan participants are entitled to:

(a)    Examine, without charge, at the Administrator's office and at other specified locations, all documents governing the Plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration.

(b)    Obtain, upon written request to the Administrator, copies of documents governing the operation of the Plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The Administrator may make a reasonable charge for the copies.

(c)    Receive a summary of the Plan's annual financial report. The Administrator is required by law to furnish each participant with a copy of this summary annual report.

(d)    Obtain a statement telling you whether you have a right to receive a pension at Normal Retirement Age and, if so, what your benefits would be at Normal Retirement Age if you stop working under the Plan now. If you do not have a right to a pension benefit, the statement will tell you how many years you have to work to get a right to a pension. THIS STATEMENT MUST BE REQUESTED IN WRITING AND IS NOT REQUIRED TO BE GIVEN MORE THAN ONCE EVERY TWELVE (12) MONTHS. The Plan must provide this statement free of charge.

**What duties are imposed on the people or entities who operate the Plan?**

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the Plan. These people called "fiduciaries" of the Plan, have a duty to operate the Plan prudently and in the interest of you and other Plan participants and beneficiaries. No one, including your Employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a pension benefit or exercising your rights under ERISA.

If your claim for a pension benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the Plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Administrator to provide the materials and pay you up to $110.00 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Administrator.

If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. In addition, if you disagree with the Plan's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, you may file suit in Federal court.

If it should happen that the Plan's fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S.

Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees if, for example, it finds your claim is frivolous.

**How do I submit a claim for Plan benefits?**

You may submit to the Administrator a written claim for benefits under the Plan. The Administrator will evaluate your claim to determine if benefits are payable to you under the terms of the Plan. The Administrator may solicit additional information from you if necessary to evaluate the claim.

If the Administrator determines the claim is valid, then you will receive a statement describing the amount of benefit, the method or methods of payment, the timing of distributions and other information relevant to the payment of the benefit.

**What if my benefits are denied?**

Benefits will be paid to you and your beneficiaries without the necessity of formal claims. You or your beneficiaries may make a request for any Plan benefits to which you believe you are entitled. Any such request should be in writing and should be made to the Administrator.

Your request for Plan benefits will be considered a claim for Plan benefits, and it will be subject to a full and fair review. If your claim is wholly or partially denied, the Administrator will furnish you with a written notice of this denial. This written notice must be provided to you within a reasonable period of time (generally 90 days) after the receipt of your claim by the Administrator. The written notice must contain the following information:

(a)    the specific reason or reasons for the denial;

(b)    specific reference to those Plan provisions on which the denial is based;

(c)    a description of any additional information or material necessary to correct your claim and an explanation of why such material or information is necessary; and

(d)    appropriate information as to the steps to be taken if you or your beneficiary want to submit your claim for review.

If notice of the denial of a claim is not furnished to you in accordance with the above within a reasonable period of time, your claim will be deemed denied. You will then be permitted to proceed to the review stage.

If your claim has been denied or deemed denied, and you want to submit your claim for review, you must follow the Claims Review Procedure.

**What is the Claims Review Procedure?**

Upon the denial of your claim for benefits, you may file your claim for review, in writing, with the Administrator.

(a)     YOU MUST FILE THE CLAIM FOR REVIEW NO LATER THAN 60 DAYS AFTER YOU HAVE RECEIVED WRITTEN NOTIFICATION OF THE DENIAL OF YOUR CLAIM FOR BENEFITS, OR IF NO WRITTEN DENIAL OF YOUR CLAIM WAS PROVIDED, NO LATER THAN 60 DAYS AFTER THE DEEMED DENIAL OF YOUR CLAIM.

(b)     You may review all pertinent documents relating to the denial of your claim and submit any issues and comments, in writing, to the Administrator.

(c)     Your claim for review must be given a full and fair review. If your claim is denied, the Administrator must provide you with written notice of this denial within 60 days after the Administrator's receipt of your written claim for review. There may be times when this 60 day period may be extended. This extension may only be made, however, when there are special circumstances which are communicated to you in writing within the 60 day period. If there is an extension, a decision will be made as soon as possible, but not later than 120 days after receipt by the Administrator of your claim for review.

(d)     The Administrator's decision on your claim for review will be communicated to you in writing and will include specific references to the pertinent Plan provisions on which the decision was based.

(e)     If the Administrator's decision on review is not furnished to you within the time limitations described above, your claim will be deemed denied on review.

(f)     If benefits are provided or administered by an insurance company, insurance service, or other similar organization which is subject to regulation under the insurance laws, the claims procedure relating to those benefits may provide for review. If so, that company, service, or organization will be the entity to which claims are addressed. Ask the Administrator if you have any questions regarding the proper person or entity to address claims.

      If you have a claim for benefits which is denied upon review or ignored, in whole or in part, you may file suit in a state or Federal court.

**What can I do if I have questions or my rights are violated?**

      If you have any questions about the Plan, you should contact the Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Administrator, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in the telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration.

## ARTICLE XIII
## GENERAL INFORMATION ABOUT THE PLAN

There is certain general information which you may need to know about the Plan. This information has been summarized for you in this Article.

### General Plan Information

DeWolff, Boberg & Associates Employees' Savings Plan is the name of the Plan.

We have assigned Plan Number 003 to the Plan.

The amended and restated provisions of the Plan become effective on January 1, 2001.

The Plan's records are maintained on a twelve-month period of time. This is known as the Plan Year. The Plan Year begins on January 1 and ends on December 31.

Certain valuations and distributions are made on the Anniversary Date of the Plan. This date is the last day of the Plan Year.

The contributions made to the Plan will be held and invested by the Trustee of the Plan.

The Plan and Trust will be governed by the laws of the State of South Carolina.

Benefits provided by the Plan are NOT insured by the Pension Benefit Guaranty Corporation (PBGC) because the insurance provisions under the Employee Retirement Income Security Act (ERISA) are not applicable to the Plan.

### Employer Information

Your Employer's name, address and identification number are:

DeWolff, Boberg & Associates, Inc.
102 Professional Building
Hilton Head Island, South Carolina 29928
57-0868048

### Administrator Information

The Administrator is responsible for the day-to-day administration and operation of the Plan. For example, the Administrator maintains the Plan records, including your account information, provides you with the forms you need to complete for Plan participation and directs the payment of your account at the appropriate time. The Administrator will also allow you to review the formal Plan document and certain other materials related to the Plan. If you have any questions about the Plan and your participation, you should contact the Administrator. The Administrator may designate another person or persons to perform some duties of the Administrator.

The name, address and business telephone number of the Administrator are:

DeWolff, Boberg & Associates, Inc.
102 Professional Building
Hilton Head Island, South Carolina 29928
843-785-4018

## Trustee Information

All money that is contributed to the Plan is held in a trust fund. The Trustee is responsible for the safekeeping of the trust fund. The trust fund established by the Trustee will be the funding medium used for the accumulation of assets from which benefits will be distributed.

The names of the Plan's Trustees are:

Timothy S. Boberg, Trustee
Becky Albright, Trustee

The Trustees shall collectively be referred to as Trustee throughout this Summary Plan Description.

The principal place of business of the Plan's Trustee is:

102 Professional Building
Hilton Head Island, South Carolina 29928

## Service of Legal Process

The name and address of the Plan's agent for service of legal process are:

DeWolff, Boberg & Associates, Inc.
102 Professional Building
Hilton Head Island, South Carolina 29928

Service of legal process may also be made upon the Trustee or Administrator.